STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-05-201

DONALD L. GARBRECHT
LAW LIBRARY

JUL 18 2008



Gregory Campbell,
    Plaintiff

v.

Decision and Judgment

Nicole Barron a/k/a
Cynthia Averill et al.,
    Defendants

FILED & ENTERED
SUPERIOR COURT

JUN 18 2008

PENOBSCOT COUNTY

On July 16 and 17 and August 10, 2007, hearing was held on the complaint and counterclaim. On each trial date, plaintiff Gregory Campbell and defendant Nicole Barron were present with counsel. Defendant Town of Eddington appeared through counsel. In their essence, the claims between Campbell and Barron constitute a dispute about their rights and liabilities arising from an easement that gives Barron the right to use a portion of Campbell's real property to operate and maintain a septic system servicing house lot she owns. Campbell has also asserted claims against the local municipality, the Town of Eddington, for failing to enforce applicable waste disposal laws that he contends Barron has violated. Following the trial, the parties submitted written argument, which the court has considered.

Campbell and Barron own abutting parcels of property on the Merrill Road in Eddington. Barron owns the land designated as lot 3 on the municipal tax map. *See* plaintiff's exhibit 5; *see also* plaintiff's exhibit 3a. She and her former husband, Ornsville Averill, acquired the parcel in 1988. *See* plaintiff's exhibit 6.[1] Barron and Averill were divorced the following month, and her interest in the land was set aside to him. *See* plaintiff's exhibit 7. In June 1992, Averill conveyed to Barron a leasehold of

---

[1] The deed indicates that, although it was executed in September 1988, it was not recorded until January 1992, shortly prior to the date when Barron and Averill were divorced. The recording delay is not material to this case.

1

unlimited duration for an apartment-type area within the residence located on the lot. *See* plaintiff's exhibit 8. The lease agreement also gave Barron a right of first refusal to purchase Averill's interest in the property. Ultimately, in March 2006, Averill released his interest in the parcel to Barron, and she thereby became sole owner of the property. *See* plaintiff's exhibit 10. The deed of conveyance also imposed on Barron the "rights, duties and obligations" created by a septic system easement executed among Campbell, Barron and Averill in 2002. The terms of the easement and the underlying agreement are central to this action.

In 1987, several years prior to the time Barron and Averill purchased lot 3, Campbell acquired lot 2, which abuts lot 3 on the southwesterly boundary of lot 3 and which then runs along the backside of lot 3. In 2002, Campbell acquired lot 4, which abuts the third side of lot 3. *See* exhibit 11. (The remaining side of lot 3, which runs along the southeast side of the parcel, is the Merrill Road itself). Campbell sold lot 2 to a third-party in July 2004, *see* Barron exhibit B-11, leaving him with only lot 4, which is now the site of his residence.

Until 1997, lot 3 did not have a septic system. Instead, there was a gas or electric toilet, and gray water was simply discharged outside, probably into an area near the boundary of lots 3 and 4. Barron and Campbell had discussions about a conveyance of the back portion of lot 2, then owned by Campbell, to Barron to create a site for a septic system. Campbell actually purported to convey some land to her, and in fact Barron paid Campbell some money toward the purchase. However, Campbell ultimately learned that he could not lawfully effect that conveyance. Barron was not the record owner of lot 3, and she would thereby become the owner of landlocked property without being the owner of an abutting lot that would provide her with access to it. Nevertheless, in 1997, prior to the time Campbell and Barron learned of this prohibition. Barron's then-husband, Kenwood Barron, installed a septic tank and leach field to benefit the house on lot 3. The system was located on the back portion of lot 2, on lot 3 and on the portion of lot 4 closest to lot 3.

The process of designing and installing the septic system fell well short of the requirements of Maine law. Maine law requires that the landowner obtain a permit to install the system, that the system must be designed by a licensed soil site evaluator and

2

that a licensed plumbing inspector (LPI) examine the system prior to the time it is covered to ensure that the actual system conforms to the plan. The septic system servicing lot 3 did not meet any of these requirements. First, neither Averill, who owned lot 3 in 1997, nor anyone on his behalf obtained a permit. Second, the system was not designed by a licensed soil site evaluator. Indeed, Kenwood Barron used a design he found on the Internet based on a system used in the Midwest. He did not research or investigate the requirements that would be applicable to a system installed at that location. Third, prior to the time the system was covered over, it was not inspected by a LPI. It took approximately one month for Barron, with the assistance of others, to complete the installation of the septic system. The system included a lift station or pump because of the grade of the area. It appears that in his first try, Barron installed the pump backward.

After it became known that Campbell was unable to convey the intended portion of lot 2 to Barron, the two (with Averill) became involved in litigation. Campbell filed an action for forcible entry and detainer to remove the system from his land. The court held that an FED action was not the proper legal vehicle for such relief. *See* plaintiff's exhibit 26. Campbell then filed a separate action to determine title. This action resulted in a settlement agreement among Campbell, Barron and Averill. *See* plaintiff's exhibit 1. The agreement contains several provisions that are important to the claims in this action. First, Averill and Barron agreed to the boundary lines of lots 2, 3 and 4 as those lines are shown in a survey plan prepared by the surveying firm of Plisga & Day. The trial record includes a Plisga & Day survey. *See* plaintiff's exhibits 3a and 3b. Although the date of the survey identified in the agreement is different than the date noted on the survey itself, the evidence establishes that there exists only one Plisga & Day survey of the subject lots. This confirms that the agreement adopts the survey admitted into the trial record.

Second, under the agreement, Campbell granted to Averill and Barron two easements associated with the septic system servicing lot 3. The first easement allowed Averill and Barron to keep the septic system where it had been installed in 1997, and the second created a twenty-five foot right of way over Campbell's property from the Merrill Road to the location of the septic system as access to it. At trial, the parties stipulated that the Plisga & Day survey correctly depicted the location of the septic system and

3

associated easements. The survey reveals that they are located on portions of lots 2, 3 and 4. As is noted above, at the time the parties executed the agreement, Campbell owned lots 2 and 4.

As part of the settlement, Campbell executed an instrument creating and conveying the septic system easement to Averill and Barron. The grant included the following provision:

> If at any time the aforesaid septic system is determined to be in violation of any federal, state or municipal laws, rules, regulations or ordinances of any kind or nature, the Grantees, their heirs or assigns, shall have sixty (60) days from notice of the violation to bring the septic system into conformity. Should any federal, state or municipal entity grant an extension to bring any violation into compliance, grantees or their heirs or assigns, shall not be considered in violation of this provision until such time, as either the 60 days or the extension whichever is later occurs [sic], expires. If for any reason the Grantees, their heirs or assigns, fail to bring the system in conformity this agreement shall be deemed violated and at the election of the Grantor, his heirs and assigns, an action may be brought to rescind both easements as a result of a violation of this agreement. The cost of any such action, including attorney's fees, shall be borne by the Grantees, their heirs and assigns, only in the case where the grantor prevails in rescinding the easements.

*See* plaintiff's exhibit 2. Campbell executed the instrument creating the easement in December 2002. He, Averill and Barron then executed the settlement agreement in January 2003, and the instrument creating the easement was recorded in February 2003.

Campbell sold lot 2 in July 2004, *see* Barron exhibit B-11, and took up residence on lot 4.

Prior to the time the parties resolved the title claims in late 2002 and early 2003, the municipal code enforcement officer raised the question with Campbell of whether an unpermitted septic system was located on lot 2. *See* plaintiff's exhibit 29. Campbell responded that he did not own the land, *see* Barron exhibit B-15, because he believed then that he had conveyed the property to Barron. Campbell then learned, as is noted above, that he was not allowed to convey the rear portion of lot 2 to Barron. Campbell notified Barron of this development in April 2001. *See* Barron exhibit B-14. Several months later, in early 2002, Rebecca Albright, the Town's CEO, confirmed the restriction with Campbell. *See* plaintiff's exhibit 33. It is easy to infer that this change in the

4

parties' understanding of their rights and interests generated the dispute embodied in the court action, the settlement of which directly addressed these problems.

Once the parties finalized their agreement in early 2003, the CEO contacted Averill and Barron, advising them that they were now obligated to bring the septic system for lot 3 into compliance with applicable subsurface waste disposal laws. *See* plaintiff's exhibit 38. In June 2003, the CEO granted Averill and Barron an additional 30 days to submit the design for a new system. *See* plaintiff's exhibit 40. The Town took no further action for several months, while there was a change of its code enforcement officers. Albright's successor, Charles Norburg, Jr. wrote Averill and Barron to advise them of his position that their septic system was "illegally installed" and reiterated the need for them to file a properly designed system. He also advised them of the monetary penalties that can be imposed for a violation. *See* plaintiff's exhibit 41. The State Plumbing Inspector (SPI), an agent of the Department of Health and Human Services, became involved through a site visit and, in a letter written in early December 2003, confirmed that the system had been illegally installed because was not supported by an application or an inspection and did not meet "proper site evaluation requirements. . . ." *See* plaintiff's exhibit 43. Norburg wrote again to Averill, *see* plaintiff's exhibit 46, relaying the SPI's conclusion that the septic system on lot 3 "was not designed by a licensed evaluator, was not permitted and was not inspected prior to its being covered . . . ." Consequently, according to the SPI, the existing system would have to be replaced by a new, properly designed one. Because of the onset of winter, Norburg gave Averill until May 15, 2004, to obtain a permit and install a conforming septic system.

By mid-May 2004, Averill had not submitted a plan to Norburg. Norburg gave Averill an additional 13 days, to May 28, 2004. *See* plaintiff's exhibit 50. It appears that Averill was affected by health issues during that period of time, and Norburg, who was aware of the situation, did not press the matter. He wrote to Averill in March 2005, reminding Averill of the need to submit a plan. *See* plaintiff's exhibit 61. In that letter, Norburg even provided the names of several licensed site plan evaluators because Averill encountered some difficulties securing one. Norburg gave Averill until April 19, 2005, to file a plan with the Town. *Id.* Soon after that, Norburg sent Barron a letter, *see* plaintiff's exhibit 65, apparently because from a number of communications she initiated

5

with him about Campbell,[2] he inferred that she had an interest in lot 3. In that letter, Norburg demanded that she or Averill "immediately" submit a septic system design created by a licensed site plan evaluator. Norburg rejected the legitimacy of the design that Barron evidently had submitted; this appears to have been the Wisconsin design that Kenwood Barron found on the Internet.

During the summer of 2005, Barron arranged for a site visit by a licensed site evaluator, Teresa Davis. Later that year, Davis prepared a plan for a septic system that could be used to replace the existing one. *See* plaintiff's exhibit 24. Barron submitted the plan. The director of the state's Subsurface Wastewater Program approved the plan, which would require several variances. *See* plaintiff's exhibit 70. The Town, however, has not acted on the plan pending resolution of the instant dispute regarding the parties' rights under the easement that Campbell granted to Barron in 2002.

This discussion of the evidence and the findings noted above set the stage for consideration of the claims pending between Campbell and Barron. In his complaint, Campbell asserts that Barron breached the 2002 settlement agreement (count 1), that she engaged in fraudulent conduct by failing to bring the septic system for lot 3 into compliance with regulatory requirements and honor the boundary lines (count 3), and that she has converted his property interests (count 5).[3] In a counterclaim, Barron seeks a declaratory judgment regarding her easement rights, and she has asserted several tort claims against Campbell.

The court concludes that Barron has not satisfied the condition of the easement grant requiring that the septic system conform to all subsurface waste disposal requirements. Under the grant, Barron must bring the septic system servicing her land into conformity with applicable requirements within 60 days of a determination that the system is in violation of any applicable legal requirement, or by any extension of a

---

[2] The trial record reveals that Barron and Campbell had numerous interchanges with Norburg, in which each complained about land use activities carried out by the other and complained that Norburg's responses to those complaints were inadequate.

[3] Campbell has waived claims for abuse of process (count 2) and unjust enrichment (count 4).

deadline allowed for such remediation if the extension is beyond the initial 60-day correction period.

The requirements relevant to this action encompass design, permit and inspection phases of a septic system installation. The system must be designed by someone who is licensed to do so, so that the licensed soil site evaluator will be in a position to assess the soil, identify limiting factors and create a system that meets requirement of law. The design is then subject to regulatory evaluation through the permitting process. Finally, after the system is installed but while it is still visible, a licensed plumbing inspector must inspect the installed system to verify that the approved design was implemented. None of these things happened here. Instead, the system servicing Barron's residence is based on a design from another state in a different area of the country, and it was installed by a person who had no particular qualifications to do so. The plan was not subjected to regulatory review. Finally, no knowledgeable person determined whether or not the system was built in conformity with the design. As Kenwood Barron testified, he is the only person who knows whether the actual system matches the design. Thus, even though there is no affirmative evidence that the system is malfunctioning,[4] the evidence establishes that Barron's system does not meet the requirements of the law.

The evidence also demonstrates that there has been a prior determination that the septic system associated with Barron's land does not comply with these requirements. Several letters that Norburg wrote to Averill can only be seen as both determinations and notices of a violation. For example, by letter dated October 28, 2003, Norburg wrote to Averill that "I [Norburg] find that you have not followed up on correcting your illegally installed septic system. . . .Each day is a new violation." *See* plaintiff's exhibit 41. On December 22, 2003, Norburg similarly wrote that because the SPI concluded that the system was not properly designed, permitted or inspected,

> it must be replaced with a properly designed system. . . .
> It is therefore required of you to have a site evaluation performed on your property for a septic system to service your house. . . .Failure to comply subjects you to penalties provided by State statute which are fines of a minimum of $100 a

---

[4] A septic system is deemed to malfunction if there is standing effluent on the ground (rather than contained within the system), if effluent backs up into the structure, or if it contaminates nearby water sources. There is no persuasive evidence that Barron's system has failed in any of these ways.

7

> day and a maximum of $2500 a day as long as the violation exists. Each day is a
> new violation.

*See* plaintiff's exhibit 46. Therefore, by late 2003 – and probably even prior to that time
--, Averill had been provided notice of the Town's determination that the septic system
was in violation of applicable requirements. This triggered the obligation imposed on
Barron and Averill to bring the system into compliance with the outstanding
requirements.

The evidence reveals that ultimately, in consultation with state officials,
municipal officials did not require Barron to comply with the law that Kenwood Barron
chose to disregard when he installed the system in 1997. State and municipal officials
actively evaluated the septic system associated with Barron's land and assessed the
several remedial options that existed. The Town could have elected to direct Barron to
obtain a design created by a licensed soil site evaluator, seek a permit and then arrange
for an inspection of the installed system – in other words, to do the things that should
have been done in the first place. Despite the availability of this recourse, the Town
directed Barron only to obtain a design from a qualified evaluator for a replacement
system that would be installed if the existing one failed. The Town chose this approach
because, despite the violations, there was no sign that the system was not working
properly, although it cannot be known with certainty if it is functioning well because of
the possibility of undetected failures. Therefore, instead of ordering Barron to dig up the
existing system, the Town required her to make provision for any malfunction. As is
discussed further below, this municipal response was within the range of its discretion.

However, even though the Town allowed Barron to continue to use the septic
system that had not been installed legally, the easement grant required more. The
easement required Barron and Averill to bring the system into actual compliance within
60 days of the date of the notice of violation or within any additional time allowed by
enforcing authorities. The easement grant does not allow a lesser option that falls short
of full compliance. Thus, the Town's decision to allow Barron to operate an illegally
installed septic system means only that Barron is not exposed to a land use enforcement
action that the Town could otherwise pursue. That municipal decision, however, does not
excuse Barron from performance under the easement grant, which is a private

8

arrangement created among Campbell, Barron and Averill and which, under the terms of the deed she received from Averill, Barron is required to provide. Irrespective of the Town's course of action, Barron remained subject to the conditions of the easement grant, which required her to maintain or install a fully lawful septic system within the time frame established in the instrument.

From the trial record, it is clear that no later than May 10, 2006, enforcement authorities had decided to allow Barron to keep the existing non-conforming system on the condition that she provide a conforming design for a system that would be installed if the existing one malfunctioned or otherwise failed. *See* plaintiff's exhibit 70. (In fact, as was acknowledged in the May 10 letter, Barron had submitted a plan for a replacement system. *See* plaintiff's exhibits 24, 70.[5]) This date, in other words, is the latest date when the Town would have changed its position on the nature of the remedial action required of Barron, from an insistence on compliance with the basic requirements associated with the septic system (a design prepared a licensed evaluator' a municipal permit; and post-installation inspection), to a willingness to simply accept a replacement system design. This means in turn that at best for Barron, she may been seen to have granted an extension of time to May 9, 2006 (the date before the May 10, 2006 notice advising her that a replacement system design would likely suffice), to make her septic system in full conformity with applicable laws and regulations. Because May 9, 2006, was well beyond a date sixty days beyond the notice of violation, and because she had not brought the system into full compliance with legal requirements as of then, that became the date when her easement rights became extinguished.[6]

---

[5] That plan would require several variances involving a setback, the depth of the system relative to the watertable, and grade. The Town has not acted on these issues because of the pending of this action, which could affect whether Barron would be entitled to exercise her rights under the existing easement grant to install the replacement system.

[6] The parties spent time presenting evidence on the disputed question of whether or not Campbell helped with the construction and installation of the septic system in 1997. This issue is not material to the claims in this case. More than five years *after* the system was installed, the parties entered into a contract under which Barron agreed to make the system servicing lot 3 fully lawful. She assumed that contractual commitment, regardless of whether Campbell assisted in the 1997 construction effort and regardless of whether he even knew that the system had not been installed lawfully. Further, the language of the

Because Barron has violated the condition of the easement, under its terms Campbell is entitled to a judgment rescinding the grant. He is also entitled to an award of reasonable attorney's fees and costs for his prosecution of this action. The court need not and does not reach Campbell's remaining allegations that Barron breached the terms of the settlement agreement in other ways.

In addition to his claim for breach of contract, Campbell has asserted claims for fraud and conversion. He has not proven either of these causes of action. His claim for fraud is based on a contention that Barron failed to perform her obligations under the agreement and that she failed to honor his boundary lines. These obligations arise under the contract, and her failure to perform is subsumed in Campbell's claim for breach of contract itself. Next, Barron has not converted Campbell's property through her breaching conduct. Upon Barron's violation of the condition of the easement grant, Campbell acquired the right to rescind the easement, as he has done in this action. Until the time when any such rescission becomes effective, Barron's rights under the easement remain in place. Thus, even if any post-rescission use of Campbell's property constitutes an act of conversion, Barron's ongoing post-violation but pre-rescission use of the system is not actionable under that theory.

Barron asserted several claims against Campbell.[7] None provide the basis for relief. In counts 1 and 2 of the counterclaim, Barron alleges that Campbell himself breached the settlement agreement and the easement covenants. For the reasons set out

---

easement grant is sufficiently clear to establish Barron's obligation to comply with all applicable subsurface waste system requirements, notwithstanding a generally satisfactory reference by Campbell's then-attorney to the system. *See* Barron exhibit B7. Finally, Barron does not challenge the validity of the contract, even though she disagrees with the basis for Campbell's claim under it.

[7] The court assumes, without deciding, that Barron has preserved these claims. There are two circumstances that call this assumption into question. First, Barron included her counterclaim in a responsive pleading to Campbell's first amended complaint. Campbell subsequently was given leave to file a second amended complaint. Barron's responsive pleading to the second amended complaint does not include the counterclaims that she had filed earlier. Second, in her written argument, Barron may be seen to omit any arguments in support of any claim for relief beyond rights under the easement agreement. Despite these two circumstances, the court addresses the counts of her counterclaim.

above, Barron is the breaching party, and Campbell bears no liability to Barron under the contract.

In count 3 of the counterclaim, Barron alleges that Campbell is liable to her for fraudulent misrepresentation of an intention to comply with the terms of their agreement. Barron has not proven this claim. In count 4 of the counterclaim, she alleges that Campbell is liable for harassment, which, she pleads, amounts to conduct that is "highly offensive to a reasonable person." The court takes this to be the relevant element of a civil claim for harassment. The evidence demonstrates that Barron and Campbell have both acted with animosity toward each other for several years. Some of their conduct involved ways of attempting to assert property rights. However, the court is unable to conclude that Campbell's actions rise to the level of reprehensibility and damage necessary to establish a claim of harassment, as Campbell frames her claim.

Next, in count 5, Barron contends that Campbell is liable to her for "malicious prosecution." Such a claim, however, arises from an underlying criminal prosecution. *Pepperell Trust Co. v. Mountain Heir Financial Corp.*, 1998 ME 46, ¶ 14, 708 A.2d 651, 655-56. There is no evidence here of any prior criminal action, and so this theory of liability is plainly inapplicable. The substance of Barron's allegations in count 5 may suggest that she intended to assert a claim for wrongful use of civil proceedings. A claim for wrongful use of civil proceedings requires allegations and, ultimately, proof that the respondent initiated or continued a civil legal proceeding without probable cause; that the primary purpose of the proceeding was something other than to secure a proper adjudication of the claim; and that that proceeding was terminated in the claimant's favor. *Pepperill Trust Co.*, 1998 ME 46, ¶ 15, 708 A.2d at 656. *See also* RESTATEMENT (SECOND) OF TORTS § 674 (1977) (cited in *Pepperell Trust*). Here, during the time when Barron's claim has been pending, Campbell's claim against her has not been resolved adversely to him. This by itself undermines Barron's claim. Additionally, because the court adjudicates Campbell's claim favorably to him, Barron's cause of action does no t have support in the record.

In count 6, Barron seeks an award of punitive damages. Because she has not established any of her liability claims against Campbell, there is no basis for an award of any damages, much less punitive damages. Finally, the court denies Barron's claim for

injunctive relief because she has not established that Campbell has engaged in actionable conduct against her interests.

Campbell has also asserted claims against the Town. He seeks an order of mandamus, directing the Town to take enforcement action against Barron for violations of subsurface wastewater requirements. He also seeks relief against the Town under 42 U.S.C. § 1982 for violation of his constitutional rights. Neither claim has merit.

For the reasons noted above, Barron's septic system was installed illegally. Once the Town made that determination, it also needed to consider the remedial options and formulate a response. It did so in conjunction with state officials, including the director of the state's subsurface water program, which is a unit within the Department of Health and Human Service's Division of Environmental Health. Based on the evidence presented at trial, the court accepts the notion that these regulatory officials are not required to act reflexively in the face of an established violation. Rather, they are entitled to exercise discretion and fashion a remedy that constitutes a sensible response to the particular circumstances. One option that was available to the Town was to require Barron to do what should have been done in the first instance: to install a properly designed and permitted system, subject to inspection by proper authorities. In fact, for some time, the Town took this approach. In the end, however, after both local and state officials conducted a number of site visits and engaged in extensive communications with the Campbell and Barron, the Town took a less aggressive approach of requiring Barron to arrange for an approved replacement system design, so that if the existing system failed, the Town would then be assured that the new system would be a lawful one. This course was not unreasonable because there were no outward signs that Barron's system was malfunctioning. *See* note 4 *supra*. Thus, rather than requiring her to replace a system that, although installed unlawfully, appeared to have been working properly, the Town was entitled to let the situation continue until a time arrived when there was evidence that the system was actually causing harm.

Campbell's own septic system on lot 4 was also the subject of interest from the Town. He installed the system on that lot after he was directed to do so by the Town. *See* Town of Eddington exhibit 1. He claims that he was treated unfairly and discriminatorily because the Town did not take similar action against Barron. This, he

12

claims, amounted to a violation of his constitutional right to equal protection. "Unequal application of a law to those who are entitled to be treated alike is not a denial of equal protection unless there is shown to be an element of intentional or purposeful discrimination." *Aucella v. Town of Winslow*, 583 A.2d 215, 216 (Me. 1990). For several reasons, Campbell's equal protection claim fails.

First, Campbell acceded to the Town's conditional directive to install a new septic system. The essence of his challenge here is that he should not have been required to do so. The Town advised Campbell that he needed to replace the septic system on lot 4 unless it had been properly installed, inspected by a qualified inspector and determined to be in serviceable condition. In any of those conditions were not satisfied, then he would need to replace the system. Campbell testified that he did not disagree with or challenge the Town's position, and, without objection, he ultimately complied with the Town's requirement. As Campbell testified, he also agreed with the Town's conclusion that because the existing system on lot 4 had not been used in the past five years, it needed to be replaced in light of the other issues.

Second, with respect to the status of their septic systems, Campbell and Barron are far from similarly situated. As is noted above, the system associated with Barron's lot had been used continuously since it was installed in 1997, and there was no evidence that Barron's system had failed or was not operating properly otherwise. This allowed the Town, in its discretion, to temper its enforcement response arising from the improprieties in the installation of the system. In contrast, the system located on lot 4 had not been used for a considerable period of time, and there was affirmative evidence that at least a portion of the system had failed. *See* Barron exhibit B18 (reference to failure of the septic system to function). The tank itself was metal, and according to Campbell himself, the effluent simply drained out of the tank through a pipe, so there was no meaningful leaching system. The qualitative differences between the systems servicing lots 3 and 4 plainly justified the Town's decisions to required different remedial responses from the responsible parties. Although Campbell occasionally may have tested the patience of Town officials, the court is not persuaded that they acted in response to any discriminatory animus. At least once, Norburg made a written reference to Campbell's disabled status. *See* plaintiff's exhibit 51. That reference was inappropriate.

13

However, the context of the reference is not evidence of invidious discrimination or any other level of culpability necessary to establish an equal protection claim. *See Pagan v. Calderon*, 448 F.3d 16, 34-35 (1st Cir. 2006).

Finally, Campbell seeks an order enjoining the Town to take enforcement action against Barron. At best for Campbell, Maine law may have provided him with a mechanism by which he could have sought such relief: an action brought under the procedure established in M.R.Civ.P. 80B. By its own terms, rule 80B governs challenges to a municipal officer's refusal to act. *See* M.R.Civ.P. 80B(b). Campbell pursues this part of his claim against the Town as an independent action, fully outside the procedural framework of rule 80B. As a component of this original action commenced in Superior Court, rather than an appellate challenge, he is not entitled to relief.

The Town seeks an order of attorney's fees against Campbell. Attorneys fees may be awarded to a defendant in certain civil rights cases in the trial court's discretion "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1977). The court is unable to make such a finding here. Even though, in the court's view, Campbell's case against the Town is not a close one, it was the product of a long-standing tripartite transaction in which the Town was centrally involved. The Town's decision not to pursue an aggressive but available enforcement action against Barron was one of several options available to it. The question raised by Campbell's claim is whether the Town's election became actionable. The court concludes here that it was not. However, Campbell's arguments do not fall to the level required as the foundation for an award of attorney's fees against him.


The entry shall be:

On count 1 of the complaint, judgment is entered for the plaintiff. The easement granted by Gregory A. Campbell to Ornsville T. Averill, Jr. and Cynthia A. Averill a/k/a Nicole Barron, created in an instrument recorded at book 8588 page 46 of the Penobscot County Registry of Deeds, is rescinded and no longer is in force and effect.

On counts 2-5 of the complaint, judgment is entered for defendant Nicole Barron.

On counts 6-7 of the complaint, judgment is entered for defendant Town of Eddington.

14

On the counterclaim, judgment is entered for counterclaim defendant Gregory A. Campbell.

Plaintiff Gregory A. Campbell is awarded his costs, including reasonable attorney's fees, from defendant Nicole Barron incurred in his claim against her on count 1 of the complaint.

Defendant Town of Eddington is awarded its costs of court against plaintiff Gregory A. Campbell.

Dated: June 13, 2008

_____
Justice, Maine Superior Court

-------------------------------------------------------------------------------

GREGORY CAMPBELL                                               PL
ATTY LARGAY, CHRISTOPHER  Tel# (207) 947-4529
ATTY ADDR:293 STATE STREET BANGOR ME 04401
ATTY PICKERING, JOSEPH M.   Tel# (207) 947-4529
ATTY ADDR:293 STATE STREET BANGOR ME 04401


NICOLE BARRON AKA CYNTHIA AVERILL                             DEF
ATTY BROWN, THOMAS  Tel# (207) 947-0111
ATTY ADDR:80 EXCHANGE ST PO BOX 1210 BANGOR ME 04402-1210


ORNSVILLE AVERILL DISMISSED, JR                               DEF
ATTY DEARBORN, JOEL  Tel# (207) 989-8501
ATTY ADDR:120 NORTH MAIN STREET BREWER ME 04412


EDDINGTON, TOWN OF                                            DEF
ATTY FRANCO, MARK  Tel# (207) 774-2500
ATTY ADDR:THREE CANAL PLAZA PO BOX 4630 PORTLAND ME 04112-4630


NICOLE BARRON AKA                                             3RD P DEF
ATTY BROWN, THOMAS  Tel# (207) 947-0111
ATTY ADDR:80 EXCHANGE ST PO BOX 1210 BANGOR ME 04402-1210